## GRAND RAPIDS & I. RY. CO. v. DOYLE, Collector.

### (District Court, W. D. Michigan, S. D.  March 16, 1915.)

1. INTERNAL REVENUE ☞9—CORPORATE EXCISE TAX—DEDUCTIONS FROM INCOME—"BETTERMENTS AMOUNTING TO AN IMPROVEMENT."

   Under Tariff Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 11, imposing a tax on the net income of corporations and authorizing the deduction from the gross income of all ordinary and necessary expenses actually paid out of income in the maintenance and operation of the corporation's business and properties the cost of additions and betterments amounting to an improvement of a railroad company's property and adding to its value, such as expenditures for new sidings and spur tracks, or extensions thereto, new stations at places where there had been no stations, etc., and the cost of replacing rails, bridges, culverts and stations with better and more expensive ones in excess of the cost of renewal with like kind and quality could not be deducted.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Betterment.]

2. INTERNAL REVENUE ☞4—EXECUTIVE INTERPRETATION.

   A rule promulgated by the Treasury Department for the guidance of revenue collectors, though entitled to consideration, has not great weight in determining the proper construction of a revenue law.

3. INTERNAL REVENUE ☞9—CORPORATE EXCISE TAX—DEDUCTIONS FROM INCOME—"OPERATING EXPENSES."

   The "operating expenses" of a railroad, which may be deducted from the gross income in ascertaining the net income subject to the corporate excise tax, means the expense for labor and materials which go into the actual operating of the road and property.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Operating Expenses.]

4. INTERNAL REVENUE ☞9—CORPORATE EXCISE TAX—DEDUCTIONS FROM INCOME—"MAINTENANCE."

   The "maintenance" of the property and business of a railway company, the cost of which is to be deducted from the gross income in ascertaining the net income subject to the excise tax, means the upkeep or preserving of the condition of the property to be operated, and does not mean additions to the equipment or property, or improvements of the former condition of the railroad.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maintenance.]

At Law.  Action by the Grand Rapids & Indiana Railway Company against Emanuel J. Doyle, Collector.  On motions for a directed verdict.  Verdict directed for defendant.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James H. Campbell, of Grand Rapids, Mich., for plaintiff.

Myron H. Walker, U. S. Dist. Atty., of Grand Rapids, Mich., for defendant.

SESSIONS, District Judge. Counsel upon both sides have requested the court to direct a verdict; counsel for the plaintiff asking for a directed verdict in the sum of the taxes paid under protest, with interest thereon, and counsel for the defendant asking for a directed verdict of no cause of action. The facts are undisputed and present no controversy. Therefore the issue which is presented is purely one of law and for the determination of the court and not of the jury.

[1] By section 38 of the Tariff Act of 1909 Congress provided for the imposing of special excise taxes upon all corporations doing business for profit and having capital stock represented by shares, whose net income exceeds the sum of $5,000 in any one year. The amount of the excise tax so to be laid is 1 per cent. of the net income of each corporation during one year in excess of the sum of $5,000.

The statute provides that the taxable net income of every such corporation shall be ascertained and determined by making certain deductions from the gross income of the corporation. Among other sums to be deducted from the gross income, in ascertaining the amount of the taxable net income is all the ordinary and necessary expenses actually paid within the year out of the net income in the maintenance and operation of the corporation's business and properties. This controversy arises out of that provision of the statute. The plaintiff contends that the deduction authorized by that provision of the statute includes such items as it has deducted from its gross income for expenditures made in so-called additions and betterments to its property. The defendant contends that deductions for expenditures for additions and betterments are not authorized.

During the years 1910, 1911, and 1912 the Grand Rapids & Indiana Railway Company, the plaintiff, was one of the corporations in this district subject to the excise tax imposed by this statute. The statute further provides that each year every corporation subject to the tax shall make a return to the Commissioner of Internal Revenue, and that such return shall state the gross income of the corporation from all sources and shall state the amounts of the various deductions made from the gross income as authorized by the statute.

The plaintiff in each of the years, and within the proper time, made such a return to the Commissioner of Internal Revenue. The return, in form at least, satisfied the requirements of the statute. Upon that return in each year, the Commissioner of Internal Revenue made an assessment and laid a tax as required by the statute. The taxes so laid and assessed were paid by the plaintiff. Thereafter, and after an investigation and an examination of the books and records of the plaintiff by government agents, the Commissioner of Internal Revenue decided and determined that certain deductions had been made from the gross income of the plaintiff which were not authorized by the statute, and thereupon the commissioner made a new return as authorized by the statute, and a new assessment, and levied a tax of 1 per cent. upon the new assessment. The plaintiff paid the extra taxes

so levied, and has brought suit to recover back the amount so paid, the payment having been made under protest.

The items of the deductions originally made by the plaintiff from its gross income and determined to have been improper by the Commissioner of Internal Revenue cover various expenditures, but all, in reality, of like or similar character. Those expenditures are for additions and betterments to the property of the railway corporation and include expenditures for sidings and spur tracks. In each instance the siding or spur track which was constructed was either a new siding or spur track or a new extension of an old siding or spur track. In other words, it was an addition in each instance. Those sidings or spur tracks in most instances were what are termed "industrial sidings" or spur tracks. In other words, they were sidings put in to reach industrial establishments located along the line of the railway and for the purpose of serving patrons of the road. Other items include sidings which were placed upon the main line of the road, and by the main line I do not mean the main line of the road as distinguished from its branches, but I mean the line of the railway, main line and branches included, as distinguished from sidings and spur tracks. Those sidings were in some instances passing sidings, and put in for the purpose of expediting the traffic of the road and improving the traffic facilities. In other instances they were Y-tracks, put in for the purpose of turning the engines and cars and trains of the road.

Another item of expenditure involved in this controversy was the improvement of the roadbed, including the rails. During each of these years, 1910, 1911, and 1912, the rails upon certain portions of the road were taken up and the old rails replaced with new and heavier rails. Bridges and culverts were replaced with new ones of better material. Wooden bridges and culverts were replaced with concrete and steel bridges and culverts, more expensive and more valuable. Another item of expenditure in the improvement of the right of way was the replacing of the gravel ballast with slag upon portions of the road. Another item was the improvement of frogs and switches which were put in either at sidings or at crossings.

There were also built along the line of the railway new stations. Sometimes the new station was built at a place where there had been no station. At other times an old station building was replaced with a new and better and more costly building. Improvements were made also by the addition of a system of block signals on the southern division of the road. In one instance, at least, a warehouse was purchased and used which constituted in fact a freight house. New shops were built at Grand Rapids and new machinery was installed for certain purposes. Overhead crossings were built to separate the grades of crossing railroads. The telegraph and telephone lines were, upon parts of the right of way, replaced, and, while the testimony is not very clear on that subject, the inference is that in each instance the old line was replaced with a better and more expensive new line. Additions were also made to the equipment of the road. In one year 150 new freight cars were purchased. In another year 138 new cars were purchased. Payments were made upon contracts which had been entered into in years previous for the purchase of cars, the title to

which had been retained by the seller; in other words, it was a conditional sale of cars, and the purchase price of the cars was to be paid in yearly installments and in each of two of the years an installment came due and was paid, and a certain part, one-half, of the principal, so paid, was put in this item of additions and betterments and deducted from the gross income of the railway. Certain lands were purchased for the purpose of increasing the facilities at the stations. That, in a general way, covers the expenditures which were made.

In ascertaining the amount which should be charged to the ordinary expense account of the railway and the amount which should be placed in this account of additions and betterments, this practice was pursued: For example, in replacing old rails with new there was charged to the expense account the estimated value and cost of replacing the old rails with rails of the same weight, and there was charged to additions and betterments account the excess over and above the sum charged to the expense account represented by the excess weight of the rails. In other words, when rails were improved by putting in heavier rails than the old ones, the estimated cost of replacing the old rails with new rails of like weight was charged to expense, and the excess cost was charged to additions and betterments. The same was true of the stations which were built. If an old station was replaced with a new one, say an old wooden station replaced with a brick and stone or concrete building, the estimated expense of replacing the old building with a new one of the same material was charged to expense, while the excess cost of the brick and stone building over the wooden one was charged to additions and betterments. The same method was pursued in making all of the charges that are contained in this account of additions and betterments.

The precise question to be determined is this: Under the statute, in accordance with which the excise tax was levied, are these so-called additions and betterments a part of the ordinary and necessary expenses of the maintenance and operation of the railway company's business and property? That question is really one of first impression. Few authorities have been cited by counsel upon either side. In fact, there are few decisions of the courts which are applicable to this comparatively new statute.

Some decisions have been cited by counsel for the plaintiff, but they have little or no bearing upon the question here presented. One case has been cited, decided by the Supreme Court in considering the statute authorizing the construction of the Union Pacific Railroad. It is evident that the statute there under consideration by the court was for an entirely different purpose than the statute here under consideration. In the occurrence out of which that case arose, the government of the United States was seeking to aid and promote the building of a railroad to accommodate the growing western portion of this country. In effect, if not in fact, the government entered into a partnership in the building and construction and early operation of that road. This section of the Tariff Act, whatever may be said of the other sections, does not involve the protection or promotion of railways or other industrial corporations. It is purely a revenue statute, and must be considered from the standpoint of revenue to be derived by the

government. Other cases have been cited which relate to early excise statutes. In each of the cases which have been cited, the court specifically confined its decision to the statute then under consideration, which was, in terms, different from the present one. Therefore we can derive very little aid from those decisions.

One case has been cited by counsel for the plaintiff which involves a construction of the statute here under consideration. That decision, as I read it, is in effect against the contention of the plaintiff. In that case an insurance association claimed the right to deduct from its gross income amounts which it had expended in replacing old office furniture with new. The stipulation of facts in that case specifically states that it was a mere renewal of the old furniture, and it is a fair inference that the furniture was renewed with furniture of like kind and quality as the old. In this case, the cost of renewal with like kind and quality has been charged to expenses, and has been allowed, and it is only the excess cost which has been charged to the account of additions and betterments and been disallowed by the Commissioner of Internal Revenue.

[2] On the part of the defendant, there has been cited a Treasury decision. While that decision, which in fact is a rule promulgated for the guidance of revenue collectors of the government, is entitled to some consideration, it is not entitled to great weight, because to make it controlling would be permitting a party to a lawsuit to formulate and determine the rule of law by which his case should be decided. The party promulgating the rule contained in that Treasury decision is the real party defendant in this action, and, of course, courts cannot permit a party to a lawsuit to say what the rule of law for the decision shall be.

There has also been cited the requirements of the Interstate Commerce Commission relative to a uniform system of accounting, or accounts to be kept by railway companies. That rule or requirement is important in one respect and in only one. That rule was promulgated by the Interstate Commerce Commission in 1907. The act of Congress here under consideration was enacted in 1909, and it is to be presumed that Congress knew and took into consideration the system of bookkeeping or accounting which had been required by one of the government agencies, the Interstate Commerce Commission, and enacted this statute in view of that requirement. By the terms of that rule railroad companies were required to carry an account of additions and betterments like the account which has been carried by this plaintiff, and in which these expenditures have been placed.

So, as I say, the case is really one of first impression, and has to be decided from the statute itself, and not from the decisions of the courts or government agencies. Are these expenditures included in the "necessary expenses of the maintenance and operation of the plaintiff's railway property and business"? In my judgment, they are not. In each instance it is an addition to the property, and an addition to the value of the property of the railway company. It is an improvement of its property; it is an extension of its property; it is an addition, not only to its inventory value, but to its real and actual value.

It is a well-known fact that corporations in general, both railway

and manufacturing companies, often use a part of their net earnings and income in the extension and improvement of their plants and property and business. Nearly every corporation of an industrial character does that, and in many cases industrial corporations do not declare dividends for a number of years after their organization, for the very reason that they are extending and improving and adding to their property. But amounts so expended in additions are no less income than they would be if paid to the stockholder as dividends, and no less income or additions to the value than if the amount had been carried into a surplus account and placed in bank.

Banking corporations buy office furniture and build bank buildings out of the surplus account which has been derived from income; but it is none the less an addition to the value and the capital and the property of the bank. Manufacturing institutions make additions to their factories, install new machinery, increase their equipment, and do all this out of their income; but it is none the less income, and it none the less adds to the value and the capital and the money invested in the plant. Other industrial institutions take the money that is income and invest it in additions to the plants and declare stock dividends. If the contention of the plaintiff in this case be correct, a prosperous manufacturing or railway company could increase its plant equipment and property tenfold, and still not be required to pay the excise tax imposed by this statute. I do not think that was the intention of Congress. I do not think that such an intention can fairly be inferred from the language of the statute itself.

[3, 4] Every one knows what is usually meant by the operating expenses of a railroad—the payment for labor and materials which go into the actual operating of the road and the property. "Maintenance," as used in this statute, fairly means the upkeep or preserving of the condition of the property to be operated, and does not mean additions to the equipment or property, or improvements of former condition of the railroad.

It follows that the deductions originally made by this plaintiff in its return of its gross income were improperly made, and that the excess tax assessed by the Commissioner of Internal Revenue upon the amount represented by these additions and betterments was properly assessed, and the plaintiff is not entitled to recover back the taxes which it has paid.

Your verdict will be in favor of the defendant.