## CONGRESS CIGAR CO., Inc., v. HERING, formerly Collector of Internal Revenue.

### No. 1.

District Court, D. Delaware.
May 19, 1931.

Ivan Culbertson and Edmund S. Hellings, both of Wilmington, Del., for plaintiff.

Leonard E. Wales, U. S. Dist. Atty., of Wilmington, Del., for defendant.

NIELDS, District Judge.

In this action Congress Cigar Company, Inc., a Delaware corporation, seeks to recov-

er from a former collector of internal revenue of the First Delaware tax collection district, the sum of $1,566.10, with interest from July 19, 1926, claimed as taxes illegally collected. The case was tried to the court without the intervention of a jury.

### Findings of Fact.

1. Congress Cigar Company (hereinafter referred to as the Pennsylvania corporation) was incorporated under the laws of the state of Pennsylvania August 10, 1921, with a total capital stock of $500,000, divided into 5,000 shares of the par value of $100 each, which was later increased to 14,000 shares of common stock of the par value of $100 each.

2. The directors of the Pennsylvania corporation resolved to reorganized and refinance the business of that company. Accordingly, early in January, 1926, at a meeting of its stockholders, a resolution was regularly adopted authorizing the directors to take all necessary steps to organize a new Delaware corporation and transfer to such Delaware corporation all of the assets of the Pennsylvania corporation upon the assumption by such Delaware corporation of all of its liabilities, and thereafter to effect the dissolution of the Pennsylvania corporation.

3. On January 14, 1926, Congress Cigar Company, Inc., the plaintiff (hereinafter referred to as the Delaware corporation), was incorporated under the laws of the state of Delaware, with a total authorized capital stock of $1,400,000, divided into 350,000 shares, all of one class and of the par value of $4 a share, which was afterwards, on January 26, 1926, changed by amendment of its charter to 350,000 shares, all of one class and without nominal or par value.

4. Incident to the reorganization of the Pennsylvania corporation, on January 11, 1926, Samuel and Jacob Paley, holding approximately 12,000 of the 14,000 shares of the capital stock of the Pennsylvania corporation, entered into an agreement with Goldman, Sachs & Company, New York bankers, that 70,000 shares, or one-fifth of the total authorized capital stock of the new Delaware corporation, to be organized to take over the cigar business of the Pennsylvania corporation, should be transferred to Goldman, Sachs & Company, at $35 a share, or for the sum of $2,450,000. These 70,000 shares were to be obtained by each shareholder of the Delaware corporation giving up one-fifth of the shares of the Delaware corporation he would otherwise have been entitled to receive.

5. On January 16, 1926, the directors of the new Delaware corporation resolved to transfer its entire authorized capital of 350,000 shares to the Pennsylvania corporation, and to assume all the liabilities of the latter company as consideration for the assignment of the entire cigar property and business to the Delaware corporation.

6. On January 18, 1926, the Pennsylvania corporation changed its name to Pacong Cigar Company, Inc., and a certificate for 350,000 shares of stock of the Delaware corporation was delivered to it in accordance with the agreement theretofore made.

7. On February 10, 1926, the Pacong Cigar Company, Inc., pursuant to a request dated February 5, 1926, signed by all its stockholders, directed its transfer agent to transfer 70,000 shares of the 350,000 shares of the Delaware corporation, theretofore received by it, to O. Krause, nominee of Goldman, Sachs & Company, and to transfer the remaining 280,000 shares to the various persons who had been stockholders of the old Pennsylvania corporation in the same proportions as they had been stockholders in that corporation, and these transfers were in due course made in accordance with such direction.

8. For the 70,000 shares delivered to O. Krause, Goldman, Sachs & Company paid to Samuel and Jacob Paley $2,450,000, which sum, although it does not definitely appear from the record, was probably, and may be assumed to have been, distributed by them pro rata to the persons contributing the 70,000 shares of stock.

9. The 70,000 shares of the Delaware corporation received by Goldman, Sachs & Company were sold by that company in varying amounts to the investing public, whereby several hundred new stockholders became interested in the company and the pro rata share of each of the old stockholders was reduced one-fifth.

10. Pacong Cigar Company, Inc., was dissolved August 24, 1926, and the decree of dissolution filed in the office of the secretary of the commonwealth of Pennsylvania September 2, 1926.

11. For several years prior to July 1, 1925, the Pennsylvania corporation operated several cigar factories, one of which, known as Factory No. 1313, was located in Wilmington in the First Delaware tax collection district.

12. On or about July 1, 1925, pursuant to the requirements of section 702 of the Revenue Act of 1924, the Pennsylvania corporation filed with the defendant a return showing the number of cigars manufactured and sold by its Factory No. 1313 for the period from July 1, 1924, to June 30, 1925, the return being accompanied with a remittance for $2,256.50, in payment of all taxes for manufacturing and removing cigars from Factory No. 1313 during the period from July 1, 1925, to June 30, 1926.

13. On or about January 25, 1926, the Delaware corporation took over the assets and liabilities of the Pennsylvania corporation, and succeeded the Pennsylvania corporation in the maintenance and operation of Factory No. 1313, and conducted the business in the same manner as it had been theretofore conducted by the Pennsylvania corporation.

14. Shortly after the reorganization of the Pennsylvania corporation and the transfer of its assets and liabilities to the Delaware corporation, demand was made by the defendant for the payment by the Delaware corporation of the special cigar manufacturers' tax under the Revenue Act of 1924, for the period from January 1, 1926, to June 30, 1926, together with the filing of a return by the Delaware corporation for the purpose of determining the amount of the tax.

15. Returns were filed by the Delaware corporation with the defendant showing the number of cigars manufactured and removed from its Factory No. 1313 from January 1, 1926, to June 30, 1926.

16. The plaintiff filed with the Treasury Department a claim for a refund of the special tax paid for and on account of its Factory No. 1313, for the period from January 1, 1926, to June 30, 1926, which claim was rejected in its entirety by the Commissioner of Internal Revenue.

The question presented arises under the Internal Revenue Act of June 2, 1924 (43 Stat. 253, 327). Section 702 of that act provides: "On and after July 1, 1924, there shall be levied, collected, and paid annually, in lieu of the taxes imposed by section 1002 of the Revenue Act of 1921, the following special taxes, the amount of such taxes to be computed on the basis of the sales for the preceding year ending June 30—* * * Manufacturers of cigars whose annual sales exceed four hundred thousand cigars shall each pay $24, and at the rate of 10 cents per thousand cigars, or fraction thereof, in respect to the excess over four hundred thousand cigars." Protesting against the legal-

ity of the demand of the Commissioner of Internal Revenue, the plaintiff paid the special tax assessed against it in the sum of $1,566.10 for the period from January 1, 1926, to June 30, 1926, and thereafter filed its claim for the refund of the tax so paid. The claim for refund was rejected in its entirety, and the plaintiff brought this action to recover the amount paid with interest as tax illegally collected.

No question is raised as to the amount of the tax, or the validity of the statute under which it was assessed. The plaintiff contends that the Delaware corporation and the Pennsylvania corporation should be regarded in law, so far as the matters here in dispute are concerned, as one and the same corporation. And, further, that the Pennsylvania corporation having paid the special tax as a cigar manufacturer, operating Factory No. 1313 for the entire year from July 1, 1925, to June 30, 1926, the assessment against and collection from the Delaware corporation of a like tax under the same revenue act as a cigar manufacturer operating the same factory for the period from January 1, 1926, to June 30, 1926, constituted direct double taxation, was unwarranted and illegal.

In the first place, it should be noted that the tax in question is a special tax imposed on cigar manufacturers, and is a privilege or occupation tax, and not a tax on cigars manufactured. That it is a privilege or occupation tax and not a tax on cigars manufactured, to be paid by the manufacturer thereof, is made clear by the fact that section 400 of the same act (26 USCA § 832, note) imposes a tax upon cigars manufactured, to be paid by the manufacturer, and it is reasonable to assume that a different tax was imposed by section 702 of the same act. Nor is the tax a new one, for Congress in the past has frequently imposed special cigar manufacturers' taxes to help defray the burdens of war.[1]

In Anargyros v. Edwards (D. C.) 22 F. (2d) 707, 709, affirmed (C. C. A.) 26 F.(2d) 319, the court, in construing section 1002 of the Revenue Act of 1918 (40 Stat. 1128), in terms like section 702 of the Revenue Act of 1924 (43 Stat. 327), held that this special tax is "an excise tax on the privilege of carrying on the occupation of manufacture of cigarettes, measured by the amount of its sales." While a tax upon cigars manufac-

[1] Section 4, Act of June 13, 1898 (30 Stat. 448, 450); section 4, Act of October 22, 1914 (38 Stat. 745, 752); section 408, Act of September 8, 1916 (39 Stat. 756, 791); section 1002, Act of February 24, 1919 (40 Stat. 1057, 1128); section 1002, Act of November 23, 1921 (42 Stat. 224, 297).

tured by a cigar manufacturer at a certain factory during a certain period may not be collected twice, a tax on the privilege of manufacturing cigars at a certain factory during a certain period may be collected from as many different persons, entities, or taxables as exercise the privilege within the period.

The vital question for determination, therefore, is whether or not under the facts of this case the plaintiff, the Delaware corporation, and Congress Cigar Company, the Pennsylvania corporation, are to be considered and treated not only as separate legal, but as separate taxable, entities.

█ In rejecting the claim of the plaintiff for a refund of the tax paid, the commissioner stated: "This office has held that when a corporation organized under the laws of one state, engaged in the manufacture of cigars, incorporates under the laws of another state, a separate legal entity is created under the laws of the other state, and the new corporation is deemed to have commenced business when it began operating under the new charter. This view is in harmony with the established practice of the Department."

The Commissioner relied on an opinion given to the Commissioner of Internal Revenue by the then Solicitor of Internal Revenue, October 15, 1919, on facts almost identical with those in this case, construing section 408 of the Revenue Act of 1916 (39 Stat. 791) in terms similar to section 702 of the Revenue Act of 1924, 43 Stat. 327 (Law Opinion No. 935), and the fact that the construction of the statute as set out in that opinion had been consistently applied by the Treasury Department since 1919. The defendant (citing Grand Rapids & I. Ry. Co. v. Doyle [D. C.] 245 F. 792, 796) urges that this decision is but a rule promulgated for the guidance of the collector, and although entitled to some consideration, it is not entitled to great weight. It is equally true, however, as stated by the Supreme Court in United States v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588, that "The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons." This is particularly so in cases where the construction has been uniformly adhered to for several years, and Congress has re-enacted the law many times in substantially the same language. Just what weight should be given to the opinion of the Solicitor of the Treasury

is, however, immaterial, for I am in entire accord with his reasoning and conclusion.

█ The avowed purpose of the stockholders and directors was a reorganization of the Pennsylvania corporation. The reorganization was effected by transferring the property and business to a Delaware corporation, with a new capital structure and with enlarged powers respecting the manner of doing business. The capital structures of the old and new corporations were entirely different. The authorized capital of the Pennsylvania corporation was 20,000 shares of the par value of $100 each, with 14,000 shares issued and outstanding. The authorized capital of the new Delaware corporation was 350,000 shares of the par value of $4 per share, changed twelve days after its incorporation to 350,000 shares of no par value. The old corporation had nine stockholders. The new corporation shortly after the reorganization had several hundred stockholders. The Delaware charter imposed a different measure of responsibility to the public, different rights between different stockholders and the company, and between stockholders inter sese. In Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 577, 69 L. Ed. 1079, a new corporation organized to continue the business of the old was created under the laws of another state, with a different capital structure, and with different rights and powers. The court said: "In the case at bar, the new corporation is essentially different from the old. A corporation organized under the laws of Delaware does not have the same rights and powers as when organized under the laws of New Jersey. Because of these inherent differences in rights and powers, both the preferred and the common stock of the old corporation is an essentially different thing from stock of the same general kind in the new." As a result of the reorganization, the new Delaware company commenced business as a cigar manufacturer in January, 1926, succeeding the Pennsylvania corporation in the operation of the Wilmington Factory No. 1313. While it is true that the Delaware company conducted the business at that factory in the same manner as it had theretofore been conducted by the Pennsylvania corporation, it was nevertheless a new corporation, operating under a new charter, engaged in the business of manufacturing cigars, and became liable to tax as a manufacturer of cigars, under the revenue act in question. The old Pennsylvania corporation continued its separate corporate existence for some time after the new Del-

aware corporation came into being and commenced the manufacture of cigars at Factory No. 1313, and was not dissolved until August 24, 1926, some weeks after the close of the taxable period in question. The fact that the Pennsylvania corporation had paid the government on or about July 1, 1925, pursuant to the requirements of the revenue act, all taxes assessed against it for manufacturing and removing cigars from Factory No. 1313 during the period from July 1, 1925, to June 30, 1926, cannot relieve the new Delaware corporation from the tax assessable against it when it commenced the business of a cigar manufacturer in January, 1926, for the period commencing on the date of the beginning of manufacture and ending June 30, 1926. In this connection it is important to bear in mind, as before stated, that the tax assessed is a tax on the privilege of manufacturing cigars at this factory, and not a tax on the cigars there manufactured. Whether or not the Pennsylvania corporation, on ceasing business in January, 1926, would have been entitled to a rebate or a refund of a portion of the tax theretofore paid by it for the privilege of manufacturing cigars at this factory for the full year from July 1, 1925, to June 30, 1926, is a question with which we are not here concerned.

### Conclusions of Law.

1. The plaintiff, Congress Cigar Company, Inc., the new Delaware corporation, was a separate taxable entity from Congress Cigar Company, the old Pennsylvania corporation.

2. The plaintiff was liable for the payment of the special tobacco manufacturers' tax assessed against it for the period from January 1, 1926, to June 30, 1926.

A verdict will be rendered for the defendant.

Exceptions, if any, may be filed within four days from the date hereof.