CHARLES T. KOUNTZE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FREDERICK H. DAVIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WALTER B. ROBERTS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES T. KOUNTZE AND ALICE A. KOUNTZE, EXECUTORS OF THE ESTATE OF LUTHER L. KOUNTZE, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIS TODD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THOMAS L. DAVIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 37323, 37324, 37395, 37534–37536.

Promulgated October 22, 1931.

*Kenneth S. Finlayson, Esq.*, for the petitioners.
*B. M. Coon, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The issue in Docket Nos. 37323 and 37395 relating to a loss of $5,000 invested in stock of the Dort Sales Company was not presented at the hearing or supported by any evidence. Counsel for the petitioners asserts in his brief that the *sole* issue in the cases is the value of corporate stock as the basis of determining profit. Therefore, we assume that the former issue has been abandoned and affirm respondent's determination as to it.

The petitioners present two phases of their allegation of the respondent's errors:

(1) That the basis adopted by them in their returns and by respondent in his notices of deficiency was erroneous and that the proper basis for computing the profit derived from the sale of the common stock of the Union Power and Light Company to the Albert Emanuel Company, Inc., is the value of that stock on September 12, 1917, the date of the reorganization, which value, it is claimed, was at least $130 per share, and

(2) If it be determined that the March 1, 1913, value of the capital stock of the Union Company is the correct basis for such computation, the value of that stock was at least $100 per share on that date.

The evidence of value introduced by petitioners is so convincing as to leave us practically only a question of law as to the basis for determining gain. Petitioners' witnesses were men of high standing and eminent qualifications and their testimony stands uncontradicted.

Passing to the question of law, the petitioners contend that the capital stock of the Union Power and Light Company acquired by them on September 12, 1917, was essentially different in character and worth from the stock of the Union Company held by them before the reorganization. They assert that the situation is governed by the decision of the United States Supreme Court in *Marr* v. *United States*, 268 U. S. 536. The respondent maintains that the

stockholders of the Union Company possessed the same shares of interest in the assets and business of the enterprise after the reorganization as they did before, and that *Weiss* v. *Stearn*, 265 U. S. 242, is controlling.

In the cases at bar the Union Company, on September 12, 1917, sold all of its assets to the Union Power and Light Company for 10,000 shares of the common and 2,500 shares of the preferred stock of the latter company and distributed the stock thus received to its own stockholders in the same proportion as they had held its stock. Twenty-five hundred shares of the preferred stock of the Union Light and Power Company were set aside simultaneously for sale to the public at par and later were sold. The preferred stock of the Union Power and Light Company was charged with the payment of a cumulative dividend of 7 per cent and also was preferred in the distribution of the corporation's assets upon their sale or other disposition or upon the dissolution of the company. The outstanding 5,000 shares of preferred stock, therefore, imposed the burden of an annual dividend charge of $35,000 on the profits of the Union Power and Light Company. All of the stock of the Union Company was common stock.

In the *Marr* case, prior to March 1, 1913, Marr and his wife owned 339 shares of the preferred and 425 shares of the common stock of the General Motors Company of New Jersey. In 1916 they received in exchange for this stock 451 shares of the preferred and 2,125 of the common stock of the General Motors Corporation of Delaware. The New Jersey corporation had outstanding $15,000,000 of 7 per cent preferred stock and $15,000,000 of common stock, all shares having a par value of $100. The Delaware corporation had an authorized capital of $20,000,000 in 6 per cent nonvoting preferred stock and $82,000,000 in common stock, all shares likewise having a par value of $100. Only 750,000 shares of the common stock of the Delaware corporation were issued in exchange for the common stock of the New Jersey corporation, the remaining shares being held for subsequent sale. The difference between the cost to the Marrs of their stock in the New Jersey corporation and the value of their stock in the Delaware corporation was held to be taxable gain. The court ruled that the Delaware corporation was essentially different from the New Jersey corporation; that a 6 per cent nonvoting preferred stock was essentially a different security from a 7 per cent voting preferred stock; and that a common stock subject to the priority of $20,000,000 preferred stock and a $1,200,000 annual dividend charge was essentially different from a common stock subject only to the priority of $15,000,000 preferred stock and a $1,050,000 annual dividend charge.

In *Weiss* v. *Stearn*, the owners of the entire capital stock ($5,000,000) of the National Acme Manufacturing Company, an Ohio corporation, delivered their certificates of stock to the Cleveland Trust Company as depositary. Eastman, Dillon and Company also deposited there $7,500,000 in cash. A new corporation, the National Acme Company, was thereupon incorporated under the laws of Ohio, with $25,000,000 capital stock and powers similar to those of the old corporation. The National Acme Company then purchased the entire assets and assumed all liabilities of the old corporation in exchange for its entire capital stock issued to the depositary. The National Acme Manufacturing Company thereupon was dissolved. The depositary delivered to the stockholders the $7,500,000 in cash and certificates for $12,500,000 in stock, and to Eastman, Dillon and Company certificates for the remaining $12,500,000 in stock. It was held that each stockholder retained one-half of his interest in the corporation and disposed of the other half for cash. In the *Weiss* case it was further held that the proportional interest of each stockholder was the same in both corporations, there having been no change in the character of the securities issued and that no gain was derived. The court said: " Something more is necessary,— something which gives the stockholder a thing really different from what he theretofore had."

Under the principles established by the above cases, a new basis for computing gain or loss was established in the year 1917 when petitioners exchanged their proportionate stock interests in the Union Company for stock interests in the Union Power and Light Company. Before the reorganization the petitioners owned only common stock in the Union Company. After the reorganization they owned certain shares of common stock subject to the priority of $500,000 preferred stock, enjoying the preference of a 7 per cent cumulative dividend and also precedence in the distribution of the corporation's assets upon their sale or upon the dissolution of the corporation. They also owned certain shares of the preferred stock, but not all of them. Twenty-five hundred shares of such stock were owned by numerous stockholders residing in Nebraska, Iowa and neighboring States. These differences in stock classes and priorities and the ownership of such stock by strangers to the original stockholders of the Union Company constituted such a divergence of interest as to have an important bearing on the rights and, hence, the value of the common stock owned by the petitioners. We conclude that the interests of the petitioners in the Union Company were essentially different from those held by them in the Union Light and Power Company. See *Marr* v. *United States, supra; United States* v. *Phellis*, 257 U. S. 156; *Rockefeller* v. *United States*, 257 U. S. 176;

412

*Cullinan* v. *Walker*, 262 U. S. 906; *United States* v. *Siegel*, 52 Fed. (2d) 63, affirming, in effect, *A. J. Siegel et al.*, 4 B. T. A. 186.

The gain derived from the sale of the Union Light and Power Company stock to the Albert Emanuel Company, Inc., in 1923 should be measured by the difference between the value of that stock on September 12, 1917, as found by us, and its sale price in 1923.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*