WILLIAM JOHN MCCABE, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 69777–69784, 69803.   Promulgated February 13, 1934.

*George McClintock, Esq.*, and *J. B. Templeton, Esq.*, for the petitioners.

*Arthur H. Fast, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith : William John McCabe, Jr.; William John McCabe, as Executor of the Last Will and Testament of George H. McCabe, Deceased; Ben C. McCabe; James McCabe; James Roscoe McCabe; Milton Mathew McCabe; Cecil Charles Blair; and Harry K. Chidlaw.

## OPINION.

LANSDON: The respondent has determined that the transaction here involved was effected by the new corporation purchasing for cash the stock of the old companies. The petitioners contend that such merger was a tax-free reorganization under the provisions of section 112 of the Revenue Act of 1928.[1] The undisputed testimony shows that the plan of reorganization contemplated no cash payments by the new corporation to the stockholders of the old com-

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss * * * shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

   *       *       *       *       *       *       *

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of

panies, and that on the completion of the merger none of such stockholders had received any cash or any consideration for their stock other than the stocks and bonds of the new corporation. Unless the use of checks in the process of transferring the old stock to the new corporation, as set out in our findings of fact, can be regarded as the payment of cash by such new corporation to the stockholders of the old concerns, it is obvious that under the facts and the law the petitioners have overcome the presumption of correctness that attaches to the determination of the respondent.

A careful study of the various steps through which the new corporation acquired the stock of the old companies by the issue of its securities convinces us that no cash was paid for such stock. The checks used were in the nature of tokens or counters. The only check received by any stockholder of any old company was unsigned and the only check that any such stockholder gave in the process of converting his old stock into the securities of the new corporation was drawn on a bank in which he had no account. The unsigned check could not have been cashed and the stockholder's own check on the Royal Bank of Canada, in which he had no account, was worthless except as a counter or token to be used only in connection with the conversion of the old stock into new securities. In our opinion the use of the checks in question did not evidence any cash payments and was merely one of the parts of a single transaction contemplated by the reorganization plans.

In support of his determination the respondent cites *J. Hampton Hoult*, 24 B.T.A. 79; *B. F. Saul*, 4 B.T.A. 639; *Minnie C. Brackett, Administratrix*, 19 B.T.A. 1154; *Minnesota Tea Co.*, 28 B.T.A. 591; *Georgetown Water, Gas & Electric Co.*, 28 B.T.A. 321; *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309; *Tucker* v. *Alexander*, 25 Fed. (2d) 425; *Charles T. Kountze*, 24 B.T.A. 405; affd., *Burnet* v. *Kountze*, 66 Fed. (2d) 141. In the *Hoult* case, *supra*, the Board held that the stockholders of the old company actually sold their stock therein for cash and with the proceeds purchased preferred and

---

reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

    \*      \*      \*      \*      \*      \*      \*

(i) *Definition of reorganization.*—As used in this section  \*  \*  \*

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred  \*  \*  \*.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

common stock of the new company, but there is nowhere any showing that the stockholders of the old company acquired all the securities of the new concern and the facts disclose that other parties not interested in the old corporation held a controlling interest in the voting stock of the new concern. It is obvious, therefore, that upon the facts in that proceeding it has no bearing on the situation here.

In *B. F. Saul, supra*, also cited by the respondent, the merger agreement provided for the purchase of all the assets of the Home Savings Bank by the American Security & Trust Co. for $400,000 in cash, and that, upon the surrender of the stock owned by the stockholders of the vendor concern, each was to receive four shares of the stock of the vendee for every share so surrendered. The stockholders of the vendor did not acquire all the securities of the vendee. That transaction, which was based upon the sale of assets for cash and the subsequent use of such cash to acquire a minority of the stock of the purchasing company, is so essentially different in fact from the reorganization here under consideration that it is plain that no rule established in our decision therein has any bearing on the controversy. In *Minnie C. Brackett, Administratrix, supra*, the old company sold for cash to a new concern and with such cash purchased shares of stock in the vendee, but there is no showing that after the transaction was completed the stockholders of the old concern ratably owned all the securities of the new company and there was an actual use of cash deposited in a bank for the purposes of the transactions.

In *Georgetown Water, Gas & Electric Co., supra*, the owners of all the stock of the petitioner, pursuant to a contract, sold all of its tangible and intangible assets for a recited consideration in cash, but for a part of the amount thereof agreed to take bonds of a third concern, with the provision that the purchasing company should have the right to take over such bonds at stated intervals and pay the petitioners cash in the amount of the par value thereof. This was plainly a sale of assets in which the stockholders of the old company acquired no securities of the purchasing concern. It has no bearing on the issue here. Careful consideration of the facts in the other cases cited by the respondent discloses that all are easily distinguishable from the instant proceeding.

The facts here do not indicate even the form of a transaction in which cash was received by the petitioners. There never was a time in the course of the negotiations for merger in which it was contemplated that any stockholder of an old company should receive cash for his interest therein. The plan of reorganization provided for no cash payments. In the process of transferring the

stock of the old companies for the securities of the new concern, it was very carefully provided that none of the old stockholders could receive any cash. Petitioners who testified all swore that they never expected any cash and received none and that all they did receive was their ratable proportion of the securities of the new corporation. We are convinced that the petitioners have shown that the merger in question falls squarely within the statutory provisions upon which they rely.

Our conclusion above renders it unnecessary to decide the alternative plea of the petitioners relating to the basic cost of their shares in the old companies. All other issues have been abandoned.

Reviewed by the Board.

*Decision will be entered under Rule 50.*