## MARR *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 236. Argued November 19, 1924; restored to docket for reargument January 5, 1925; reargued March 12, 1925.—Decided June 1, 1925.

A Delaware corporation, organized for the purpose, took over the assets and continued the business of a New Jersey corporation, assuming its liabilities, after an exchange of stock, as follows: The New Jersey corporation had outstanding $15,000,000 of 7% preferred and $15,000,000 common stock, all shares of the par value of $100, and had accumulated a large surplus from profits,

the actual value of the common stock being $842.50 per share; the Delaware corporation had an authorized capital of $20,000,000 in 6% non-voting preferred stock and $82,600,000 in common, shares all of the par value of $100, and exchanged five shares of its common stock for every like share in the New Jersey corporation, and one and one-third shares of its preferred stock for every like share in the New Jersey corporation, making payments in cash to avoid fractional certificates; and thus all the stock of the New Jersey corporation was exchanged, except a few shares of preferred stock redeemed in cash, and the Delaware corporation had $7,600,000 of authorized common stock remaining which was sold or held for sale for additional capital. *Held* that the new securities thus received by an old stock-holder were not in effect a stock dividend; and that their value above the cost of his exchanged securities, bought by him prior to March 1, 1913, was taxable as income under the Act of September 8, 1916, and within the power of Congress so to tax, since the corporations were essentially different, being organized in different States and with different rights and powers, and since the shares exchanged represented different interests both because of these differences in the corporations and because a 6% non-voting preferred stock differs essentially from a 7% voting preferred stock, and common stock subject to the priority of $20,000,000 preferred and a $1,200,000 annual dividend charge differs essentially from a common stock subject only to $15,000,000 preferred and a $1,050,000 annual dividend charge. *Eisner* v. *Macomber*, 252 U. S. 159, and *Weiss* v. *Stearn*, 265 U. S. 242, distinguished. P. 539.

58 Ct. Cl. 658, affirmed.

APPEAL from a judgment rendered by the Court of Claims for the United States in a suit brought by the appellant to recover the amount of an additional income tax paid under protest.

*Mr. William L. Frierson,* for appellant.

*The Solicitor General,* with whom *Messrs. Nelson T. Hartson* and *Chester A. Gwinn* were on the brief, for the United States.

*Messrs. James Byrne* and *Arthur A. Ballantine* submitted a brief as *amici curiae,* by special leave of Court.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Prior to March 1, 1913, Marr and wife purchased 339 shares of the preferred and 425 shares of the common stock of the General Motors Company of New Jersey for $76,400. In 1916, they received in exchange for this stock 451 shares of the preferred and 2,125 shares of the common stock of the General Motors Corporation of Delaware which (including a small cash payment) had the aggregate market value of $400,866.57. The difference between the cost of their stock in the New Jersey corporation and the value of the stock in the Delaware corporation was $324,466.57. The Treasury Department ruled that this difference was gain or income under the Act of September 8, 1916, c. 463, Title I, §§ 1 and 2, 39 Stat. 756, 757; and assessed, on that account, an additional income tax for 1916 which amounted, with interest, to $24,-944.12. That sum Marr paid under protest. He then appealed to the Commissioner of Internal Revenue by filing a claim for a refund; and, upon the disallowance of that claim, brought this suit in the Court of Claims to recover the amount. Judgment was entered for the United States. 58 Ct. Cl. 658. The case is here on appeal under § 242 of the Judicial Code.

The exchange of securities was effected in this way. The New Jersey corporation had outstanding $15,000,000 of 7 per cent. preferred stock and $15,000,000 of the common stock, all shares being of the par value of $100. It had accumulated from profits a large surplus. The actual value of the common stock was then $842.50 a share. Its officers caused to be organized the Delaware corporation, with an authorized capital of $20,000,000 in 6 per cent. non-voting preferred stock and $82,600,000 in common stock, all shares being of the par value of $100. The Delaware corporation made to stockholders in the New

Jersey corporation the following offer for exchange of securities: For every share of common stock of the New Jersey corporation, five shares of common stock of the Delaware corporation. For every share of the preferred stock of the New Jersey corporation, one and one-third shares of preferred stock of the Delaware corporation. In lieu of a certificate for fractional shares of stock in the Delaware corporation payment was to be made in cash at the rate of $100 a share for its preferred and at the rate of $150 a share for its common stock. On this basis all the common stock of the New Jersey corporation was exchanged and all the preferred stock except a few shares. These few were redeemed in cash. For acquiring the stock of the New Jersey corporation only $75,000,000 of the common stock of the Delaware corporation was needed. The remaining $7,600,000 of the authorized common stock was either sold or held for sale as additional capital should be desired. The Delaware corporation, having thus become the owner of all the outstanding stock of the New Jersey corporation, took a transfer of its assets and assumed its liabilities. The latter was then dissolved.

It is clear that all new securities issued in excess of an amount equal to the capitalization of the New Jersey corporation represented income earned by it; that the new securities received by the Marrs in excess of the cost of the securities of the New Jersey corporation theretofore held were financially the equivalent of $324,466.57 in cash; and that Congress intended to tax as income of stockholders such gains when so distributed. The serious question for decision is whether it had power to do so. Marr contends that, since the new corporation was organized to take over the assets and continue the business of the old, and his capital remained invested in the same business enterprise, the additional securities distributed were in legal effect a stock dividend; and that under the rule of *Eisner* v. *Macomber,* 252 U. S. 189, applied in

*Weiss* v. *Stearn,* 265 U. S. 242, he was not taxable thereon
as income, because he still held the whole investment.
The Government insists that identity of the business
enterprise is not conclusive; that gain in value resulting
from profits is taxable as income, not only when it is rep-
resented by an interest in a different business enterprise
or property, but also when it is represented by an essen-
tially different interest in the same business enterprise
or property; that, in the case at bar, the gain actually
made is represented by securities with essentially differ-
ent characteristics in an essentially different corporation;
and that, consequently, the additional value of the new
securities, although they are still held by the Marrs, is
income under the rule applied in *United States* v. *Phellis,*
257 U. S. 156; *Rockefeller* v. *United States,* 257 U. S. 176;
and *Cullinan* v. *Walker,* 262 U. S. 134. In our opinion
the Government is right.

In each of the five cases named, as in the case at bar,
the business enterprise actually conducted remained
exactly the same. In *United States* v. *Phellis,* in *Rocke-
feller* v. *United States* and in *Cullinan* v. *Walker,* where
the additional value in new securities distributed was held
to be taxable as income, there had been changes of
corporate identity. That is, the corporate property, or a
part thereof, was no longer held and operated by the
same corporation; and, after the distribution, the stock-
holders no longer owned merely the same proportional
interest of the same character in the same corporation.
In *Eisner* v. *Macomber* and in *Weiss* v. *Stearn,* where the
additional value in new securities was held not to be
taxable, the identity was deemed to have been preserved.
In *Eisner* v. *Macomber* the identity was literally main-
tained. There was no new corporate entity. The same
interest in the same corporation was represented after the
distribution by more shares of precisely the same char-
acter. It was as if the par value of the stock had been

reduced, and three shares of reduced par value stock had been issued in place of every two old shares. That is, there was an exchange of certificates but not of interests. In *Weiss* v. *Stearn* a new corporation had, in fact, been organized to take over the assets and business of the old. Technically there was a new entity; but the corporate identity was deemed to have been substantially maintained because the new corporation was organized under the laws of the same State, with presumably the same powers as the old. There was also no change in the character of securities issued. By reason of these facts, the proportional interest of the stockholder after the distribution of the new securities was deemed to be exactly the same as if the par value of the stock in the old corporation had been reduced, and five shares of reduced par value stock had been issued in place of every two shares of the old stock. Thus, in *Weiss* v. *Stearn,* as in *Eisner* v. *Macomber,* the transaction was considered, in essence, an exchange of certificates representing the same interest, not an exchange of interests.

In the case at bar, the new corporation is essentially different from the old. A corporation organized under the laws of Delaware does not have the same rights and powers as one organized under the laws of New Jersey. Because of these inherent differences in rights and powers, both the preferred and the common stock of the old corporation is an essentially different thing from stock of the same general kind in the new. But there are also adventitious differences, substantial in character. A 6 per cent. non-voting preferred stock is an essentially different thing from a 7 per cent. voting preferred stock. A common stock subject to the priority of $20,000,000 preferred and a $1,200,000 annual dividend charge is an essentially different thing from a common stock subject only to $15,000,000 preferred and a $1,050,000 annual dividend charge. The case at bar is not one in which after the

distribution the stockholders have the same proportional interest of the same kind in essentially the same corporation.

                                                        *Affirmed.*

The separate opinion of MR. JUSTICE VAN DEVANTER, MR. JUSTICE MCREYNOLDS, MR. JUSTICE SUTHERLAND and MR. JUSTICE BUTLER.

We think this cause falls within the doctrine of *Weiss* v. *Stearn,* 265 U. S. 242, and that the judgment below should be reversed. The practical result of the things done was but the reorganization of a going concern. The business and assets were not materially changed, and the stockholder received nothing actually severed from his original capital interest—nothing differing in substance from what he already had.

*Weiss* v. *Stearn* did not turn upon the relatively unimportant circumstance that the new and old corporations were organized under the laws of the same State, but upon the approved definition of income from capital as something severed therefrom and received by the taxpayer for his separate use and benefit. Here stockholders got nothing from the old business or assets except new statements of their undivided interests, and this, as we carefully pointed out, is not enough to create taxable income.