*Decision will be entered for the respondent.*

ESTATE OF WILLIAM L. CURRY, ALBERT CURRY AND THE COLONIAL TRUST CO., ADMINISTRATORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17730.  Promulgated September 17, 1929.

*Drayton Heard, Esq.*, for the petitioners.
*Harold D. Thomas, Esq.*, for the respondent.

OPINION.

ARUNDELL: There is no evidence in the record as to the estoppel urged against the respondent and that allegation will not be considered.

The remaining claim is that the income for 1921, as found by respondent, should be reduced by $42,918.71, representing loss on the sale of bank stock. Disregarding for the moment changes in the names of the banks, the following is the substance of the facts. Prior to March 1, 1913, decedent acquired by purchase and stock dividends 240 shares of bank stock at a total cost of $54,635. The fair market value of that stock at March 1, 1913, was $46,800. Thereafter he acquired as a stock dividend 80 additional shares, and by purchase $\frac{2}{3}$ of one share for $100, making his total holdings 320$\frac{2}{3}$ shares prior to the refinancing. As a result of the refinancing his shares were reduced to 18$\frac{15}{17}$ in number and thereafter he purchased $\frac{2}{17}$ of a share for $11.76, making his total holdings 19 shares. He also received upon the refinancing 320$\frac{2}{3}$ participation certificates which were liquidated prior to 1921 by payments aggregating $198.81. In 1921 he sold the 19 shares for the sum of $3,514.24.

The March 1, 1913, value of the stock then owned by decedent being less than cost, petitioners claim a loss of the difference between (1) that value plus the cost of subsequent purchases and (2) the amount realized on the sale in 1921 plus the distributions made on the participation certificates.

The respondent argues that, taking into consideration the consolidation of the First and Second National Banks and the receivership and reorganization of the First-Second National Bank, the conclusion must be reached that the stock sold in 1921 was not the same interest which decedent purchased in the Second National Bank and that no deductible loss was sustained on the sale. His argument is predicated on *Marr v. United States*, 268 U. S. 536, and similar cases where the additional value of new securities distributed was held to be taxable as income to the stockholders.

At the hearing considerable weight was apparently attached to the question of whether the institution known in 1921 as the First National Bank at Pittsburgh was a continuation of the corporation originally chartered as the Second National Bank of Pittsburgh and in which decedent originally acquired stock. We think it must be held that it was, because throughout all the years involved the institution operated under the one charter, No. 252. So it was in *A. J. Siegel et al.*, 4 B. T. A. 186, where three banks united and continued business under the charter of one of them, with a change of name, we held that as to that one " the corporate existence  *  *  *  continued under its new name."

Considering now the outstanding facts affecting this proceeding, we have first the effect of the steps taken in uniting the two banks. A preliminary measure was the increase of the stock of the Second National out of which decedent received a stock dividend, and which of course under *Eisner* v. *Macomber*, 252 U. S. 189, did not affect his tax liability except to reduce the cost of each share for the purpose of computing gain or loss on a subsequent sale. Cf. *Miles* v. *Safe Deposit Co.*, 259 U. S. 247. The issue of the balance of the increase in stock for the assets of the First National Bank did not change the character of decedent's holdings, either intrinsically or for gain or loss purposes. All that that amounted to was the conversion of a surplus liability into a stock liability. On this point the *Siegel* case, *supra*, is not controlling, for there the stockholders of the three uniting banks surrendered their stock and received stock in the enlarged corporation in an entirely different number of shares which changed their proportionate interests. Here the stockholder received only a stock dividend and thereafter the bank in which he owned stock purchased the assets and assumed the liabilities of another bank. The purchase was effected by the issuance of stock, but this did not change the stockholders' investment any more than if the purchase had been made for cash.

The next steps for consideration are the reduction of the capital stock of the bank from $3,400,000 to $200,000 and the issue of the " participation certificates." Upon the completion of these transactions decedent had one-seventeenth of the number of shares of stock he theretofore had plus the participation certificates, which together represented his investment in the bank and left him with the same proportionate interest as before the stock reduction. The situation here is different than that in *Cullen F. Thomas*, 14 B. T. A. 1341. There the stockholder received stock issued by a new corporation organized for the purpose of taking over the assets of the old company, and " certificates of interest " issued by a third corporation which held, as trustee, a part of the assets of the old company. Here

the stock for the reduced number of shares and the participation certificates were both issued by the bank in which the decedent owned stock, the stock and participation certificates together representing the same interest he theretofore had.

After the increase of capital stock from $200,000 to $4,000,000, the decedent still had his original investment in the shares he held. True, his proportional interest was changed, but that is quite commonly the case where a corporation increases its capital by such means as the issue of stock rights or the sale of treasury stock and a stockholder fails to exercise his right to acquire his pro rata share of the increase. In such case it can not be said that gain or loss comes to the stockholder or that his failure to exercise his rights creates a new basis for a subsequent determination of gain or loss.

Thus it is seen that throughout all the various steps outlined, decedent's investment in stock of the corporation remained in its original form; that is, it remained an investment in stock in the one corporation. There was not here, as in *United States* v. *Phellis*, 257 U. S. 156, a segregation and distribution to stockholders of certain corporate assets, nor, as in *Marr* v. *United States*, 268 U. S. 536, a change of corporate identity and exchange of stock for "essentially different" stock; there was not even a technical change of corporate identities as in *Weiss* v. *Stearn*, 265 U. S. 242.

It is our opinion that decedent sustained a loss on the sale of his stock in 1921 and that the amount thereof, making allowance for the distribution on the participation certificates, should be computed as follows:

| Number of shares | Held by— | | |
|---|---|---|---|
| 100<br>33⅓ | }Decedent | Mar. 1, 1913, value | $19,500.00 |
| 140 | Decedent's brother | Mar. 1, 1913, value | 27,300.00 |
| 46⅔ | ____do | Stock dividend | |
| ⅔ | Decedent | Cost, 4/30/13 | 100.00 |
| 320⅔ | | | 46,900.00 |
| 18¹⁵/₁₇ shares owned after reduction, plus 320⅔ participation certificates | | | 46,900.00 |
| ²/₁₇ share purchased Apr. 23, 1915 | | | 11.76 |
| Basis for gain or loss | | | 46,911.76 |
| Proceeds: | | | |
| Participation certificates | | $198.81 | |
| Sale of 19 shares of stock in 1921 | | 3,514.24 | |
| | | | 3,713.05 |
| | | | 43,198.71 |
| Less admitted gain of 25 shares | | | 250.00 |
| Deductible loss | | | 42,948.71 |

Reviewed by the Board.

*Judgment will be entered under Rule 50.*