GEORGE M. WRIGHT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM A. MOOREHEAD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20555, 20875. Promulgated April 11, 1930.

*A. C. Todd, Esq.*, for the petitioners.
*F. R. Shearer, Esq.*, and *J. A. Lyons, Esq.*, for the respondent.

542

OPINION.

MARQUETTE: The controversy in these proceedings arises from the respondent's determination that the petitioners in 1920 realized a profit from the sale of their shares of the common stock of the Banna Manufacturing Co. The amounts received by the petitioners from the sale of their preferred stock of the Banna Manufacturing Co. and as special dividends from that company are not involved. The material facts are that the petitioner Wright sold 225 shares of the common stock of the Banna Manufacturing Co. that cost him $100 per share, or $22,500, and received therefor $15,750 in cash and 563 shares of the preferred stock of Banna Mills, and that the petitioner Moorehead sold 100 shares of the common stock of the Banna Manufacturing Co. which had cost him $100 per share, or $10,000, and received therefor $7,000 in cash and 250 shares of the preferred stock of Banna Mills. The respondent has determined that the preferred stock of Banna Mills had a fair market value of $95 per share when the petitioners received it and on that basis that the petitioner Wright realized a profit of $46,640 and the petitioner Moorehead a profit of $20,750.

The contentions of the petitioners are: (1) That the preferred stock of Banna Mills which they received in the transaction was in substance a stock dividend from the Banna Manufacturing Co., or the equivalent thereof, and hence taxable in the year in which they

disposed of it, and (2) that the stock had no fair market value; that the cash they received, which was at the rate of $70 per share, should be applied to reduce the cost of the stock sold in 1920, and that there was no taxable gain to them from the transaction until 1924, when the preferred stock of Banna Mills was retired.

The first contention of the petitioners is obviously without merit and needs no extended discussion. The transaction by which the petitioners secured the preferred stock of Banna Mills has none of the characteristics of a dividend. However, assuming that it does constitute a dividend, it is not a stock dividend from the Banna Manufacturing Co., since it was not paid in the stock of that company. The transaction was clearly one giving rise to gain or loss within the meaning of the Revenue Act of 1918. *Marr* v. *United States*, 268 U. S. 536; *John B. Atkins et al.*, 9 B. T. A. 140, affirmed by the Court of Appeals of the District of Columbia, December 2, 1929. We will, therefore, take up the petitioners' contention that the preferred stock of Banna Mills had no fair market value.

At the outset of the discussion of this phase of the case it should be pointed out and borne in mind that the respondent has determined that the stock in question had a fair market value of $95 per share. The burden is upon the petitioners, and they must establish by at least a preponderance of the evidence that the stock did not have any fair market value, or that it had a fair market value other than that determined by the respondent, before we would be justified in disturbing the respondent's determination.

The evidence establishes that the preferred stock of Banna Mills was closely held and that it was not traded in or listed on any exchange. The only sale of the stock in 1920, so far as we are informed, was that of ten shares by the petitioner Wright to one Wharton at $100 per share. That sale was at arms' length between a willing buyer and a willing seller, and Wharton purchased the stock as an investment and not because of any official or financial relationship between him and Banna Mills or between him and Wright. Aside from this transaction, the evidence presents a case of closely held stock in which there were neither offers to sell nor offers to buy, and in which there was no listing or dealing on a stock exchange. It seems to be the theory of the petitioners that absence of actual trading in the stock proves that it had no fair market value. We do not think that this contention is warranted. The fact that the owners of the stock did not wish to sell it, or did not offer it for sale, does not prove that it could not have been sold in 1920 at a price fairly commensurate with its intrinsic value. The absence of active trading in a stock does not necessarily show lack of fair market value, and under the circumstances other evi-

dence, including evidence as to the intrinsic value of the assets back of the stock, should be considered in determining whether the stock had a fair market value. *William Ziegler, Jr.*, 1 B. T. A. 186; *Napoleon B. Burge*, 4 B. T. A. 732; *W. C. Arthurs*, 3 B. T. A. 374; *Wilson E. Schmick*, 3 B. T. A. 1141; *William Schoenheit et al., Executors*, 14 B. T. A. 33. The evidence shows that the $250,000 of preferred stock of Banna Mills which was paid to the petitioners and the other stockholders of the Banna Manufacturing Co., was secured by all of the capital stock of the Banna Manufacturing Co., which in turn was backed by assets worth in 1920 more than $415,000. It further appears that the Banna Manufacturing Co. was prosperous in 1920 and that its operations in that year resulted in a net profit of approximately $133,000. The dividends on the preferred stock of Banna Mills were promptly paid from the time it was issued until it was retired in 1924.

In the light of all the evidence we are of opinion that the petitioners have failed to show that the respondent erred in determining that the preferred stock of Banna Mills had a fair market value of $95 per share when it was received by them. The respondent's determination must, therefore, be approved.

The petitioner Wright was during the year 1920 a married man with two dependent children, and is therefore entitled to a personal exemption of $2,800 instead of $2,000, as heretofore allowed.

*Judgment will be entered under Rule 50.*