**JOHNSON v. UNITED STATES.**

**WITRY v. SAME.**

Nos. F–183, F–184.

Court of Claims.

Oct. 20, 1930.

the commissioner should be affirmed. There are, however, certain features of the case to which attention should be called which to a considerable extent have influenced our conclusion in the case.

Letters were addressed by the Commis-

F. W. McReynolds, of Washington, D. C., for plaintiffs.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

These two suits have been begun by the plaintiffs therein to recover alleged overpayments of income taxes respectively made by each of the plaintiffs for the year 1918, proper claims for refund having been filed and by agreement of parties are submitted together.

The sole issue in both cases is whether the commissioner correctly fixed the value in 1913 of certain corporation stock which the plaintiffs sold in 1918, the stock being sold at a profit upon which each plaintiff was taxed. The claim of the plaintiff in each case is that the commissioner understated the 1913 value, thereby increasing the profit to be taxed and the amount of his tax in the sum for which he brings suit. The question in the case is wholly one of fact, and within the reasonable limits of an opinion it is not possible for the court to set out all of the matters which lead to the conclusion that the decision of

sioner of Internal Revenue to each of the plaintiffs showing the method by which the amount of additional tax assessed against each was obtained. From these letters it appears that the value of the stock of the corporation was ascertained by the application of a mathematical formula to certain facts in the case, which are not necessary to be set out here. Counsel for plaintiffs contends that this method was erroneous. The ultimate question in the case is not whether the commissioner pursued the correct method for ascertaining the value of the stock, but whether the value which he placed upon the stock is correct. It is not necessary for us to determine whether there are any cases in which the value of stock can be ascertained solely by the application of a mathematical formula, but we think in most cases it cannot. We are quite clear that in the two cases before the court there are other matters more important than the results which can be reached through the application of an arithmetical calculation, and we do not think it necessary to apply any such formula in order to determine the case.

The testimony shows that prior to 1913 practically all of the business of the company had been in the manufacture of gasoline engines, and that while this business had been successful and the amount thereof had been increasing from year to year, the percentage of net profits to gross sales commenced to fall off in 1910, and in 1912 was less than half of what it was in 1910. The net earnings in 1910 show a large increase over 1909 because a much larger volume of business was done, but in 1912 the net earnings were more than one-third less than they had been in 1910. It is quite true that from 1912 to the time when the sale was made of the stock in 1918

tho profits of the company increased, and very rapidly increased, during the latter part of this period. The reason for this was that the company had made a striking success of a tractor which had been in the experimental stages in 1912 and 1913. From the manu- facture of the tractors large profits were dorived, although the sales of the gasoline engine fell off and it became only a minor part of the business of the company. A per- son considering buying stock in the company might have thought it likely that the sales of the engine would fall off, but he could not foresee the remarkable success of the trac- tor.

It is a matter of common knowledge that the market value of shares of stock, in the absence of something that tends strong- ly to show that the future will bring a change in the profits of the company, is large- ly determined by the earnings of the com- pany in the previous year. The Waterloo Gasoline Engine Company's stock had no es- tablished market value on March 1, 1913, but a person who was considering the advisability of purchasing its stock would under the cir- cumstances be largely influenced by the de- cline in the profits of the company for the year 1912. There was then nothing to in- dicate that this decline in profits would not continue, as in fact it did with reference to the manufacture of gasoline engines, which, as already has been stated, constituted nearly all of the business which had been done up to that time. There was nothing to indicate at that time that the manufacture of the tractor would become a profitable and, as it subsequently turned out, a highly success- ful business while the manufacture of the gas- oline engine alone declined. Up to March 1, 1913, the tractors were still in the experi- mental stage, and while a small number of tractors were sold, they were sold as experi-- mental machines for which the company was responsible. The model N tractor, which finally proved so successful, was not market- ed in the ordinary manner, if at all, until 1914. The European war greatly increased the demand for tractors generally, but none of this could be foreseen on March 1, 1913.

Another fact might be specially noted. The net income for 1912 was $84,695.32. There was outstanding at that time preferred stock to the amount of at least $77,900. The rate of dividend on this preferred stock is not stated, but it is fair to assume that it was not less than $6 per share and was probably considerably more. At that rate there was only about $80,000 earned which could be applied as dividends on the common stock that year, or on 8,000 shares of common stock the net earnings were practically $10 per share. At the valuation of $180.23 per share fixed by the commissioner, the common stock earned only 5½ per cent. on the valuation. At $200 per share, the price which was fixed on the stock in the returns, the amount earned would be less than 5 per cent. It is said that this low rate was partially accounted for by the expenses incurred in experiments on the new tractor, which were charged to ex- pense and not capitalized. Granting this, these figures would have an important bear- ing on the market value of the stock.

The matters related above, which stand out particularly in the evidence, are only part of the facts which tend to sustain the commissioner's decision as to the value of the stock. We have carefully considered all of the evidence and reach the ultimate conclu- sion that the value of the stock in 1913 was not higher than that fixed by the commis- sioner.

It follows that in both of the cases under consideration the petition must be dismissed, and it is so ordered.