*1180 OPINION.
Matthews :
The Revenue Act of 1921 provides:
Sec. 234. (a) That in computing the net income of a corporation subject to the tas imposed by section 230 there shall be allowed as deductions:
*******
(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise; unless in order to clearly reflect the income, the loss should in the opinion of the Commissioner be accounted for as of a different period. No deduction shall be allowed for any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities made after the passage of this Act where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition, unless such claim is made by a dealer in stock or securities, and with respect to a transaction made in the ordinary course of its business. If such acquisition is to the extent of part only of substantially identical property, then only a proportionate part of the loss shall be disallowed. * * *
Seo. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; * * *
Prior to the effective date of the Revenue Act of 1918 (see section 202 (b) thereof) an exchange of securities upon a corporate reorganization, under circumstances here present, resulted in a realized gain or loss, the measure of the gain or loss being the difference between the cost of the old securities and the market value of the new securities received in exchange. Cullinan v. Walker, 262 U. S. 184; Marr v. United States, 268 U. S. 536. The exchange here took place on June 2, 1915. No evidence was offered as to the market value of the shares received in exchange. Since the petitioner exchanged his shares, both common and preferred, in the old corporation for shares of a like nature, share for share, in the new corporation, the market value of the old securities at the time of the exchange must be taken as fixing the cost of the new securities. William Ziegler, Jr., 1 B. T. A. 186; Napoleon B. Burge, 4 B. T. A. 732; John J. Radel Co., 5 B. T. A. 250; Loring Pickering et al., 5 B. T. A. 670; A. D. Morton, 6 B. T. A. 1295; Wm. Reibert, 7 B. T. A. 1198; George A. Richer et al., 10 B. T. A 11; C. A. O'Meara et al., 11 B. T. A. 101; St. Louis Union Trust Co., Executor, 14 B. T. A. 323; Jefferson Livingston, 18 B. T. A. 1184; cf. Western Bank & Trust Co., 19 B. T. A. 401.
From the evidence presented we have found that the fair market value of Interborough Metropolitan Corporation stock at the date of exchange, June 2, 1915, was $22 a share for common and $73 a *1181 share for preferred, or a value of $73,084 for the 3,322 shares of Interborough Metropolitan Corporation common, and $306,673 for the 4,201 shares of Interborough Metropolitan Corporation preferred held by petitioner. These amounts represent the cost of the Interborough Consolidated Corporation stock received in exchange under the consolidation plan, the total cost being $379,757.
The preferred and common stock of the Interborough Consolidated Corporation was actively traded in on the New York Stock Exchange through 1922. In December of that year the tradings in this stock, both preferred and common, on the exchange, as reported in the New York Times, show that during that month large sales were made; and that at this time the stock had some value. When a stock has a ready market value on the New York Stock Exchange, although that value is low, and is freely traded on the exchange, it can not be said that the stock is altogether worthless.
On April 10, 1923, however, the stock list committee of the New York Stock Exchange removed the Interborough Consolidated Corporation stock from its list and it was no longer traded on the exchange after April 9. This was done on the advice of the secretary of the corporation itself, which was then, and had been since April 25, 1919, in bankruptcy, for the reason that certain stock held as collateral under Interborough Metropolitan Corporation bonds had been sold at foreclosure and ' the resulting deficiency judgment would exceed the remaining assets of the Interborough Consolidated Corporation. The remaining assets were sold in June, 1923, and the amount of the general creditors’ claims determined and allowed on June 29, 1923, was far in excess of the proceeds of the assets. The stock was, therefore, worthless.
The fact that the Interborough Consolidated Corporation was in bankruptcy is relied upon by the respondent to support his contention that the petitioner’s stock in this corporation became worthless before 1923. But the fact of the corporation being in bankruptcy or receivership is not enough alone to establish the worthlessness of its stock. P. J. Quealy, 6 B. T. A. 419; Henning Bruhn, 11 B. T. A. 809. Moreover, it was not until J une, 1923, that the remainder of the corporation’s assets was sold and the claims of general creditors allowed by court order, as appears from the final report of the trustee in bankruptcy. We believe that these facts, together with the ready market which the corporation’s shares had at the close of 1922, sufficiently answer this contention.
Although we are convinced that the sale of the stock at auction on November 28, 1923, was bona fide, we do not think it fixed the amount of petitioner’s loss. Inasmuch as the stock was worthless in June, 1923, the act of petitioner in selling the shares at auction *1182 in November of that year was unnecessary in order to establish his loss. The doctrine that gain or loss on a security of fluctuating value can only be determined by a sale has no application here, because the value of these shares could no longer fluctuate — it was extinct. Harry H. DeLoss, 6 B. T. A. 784; affirmed in 28 Fed. (2d) 803.
It follows, therefore, that the measure of petitioner’s loss in 1923 was the cost of his Interborough Consolidated Corporation stock on June 2, 1915, $379,757. The excess of the expense incurred in the auction sale over the proceeds is not deductible.

Judgment will be entered under Rule 50.