## JANKOWSKY v. COMMISSIONER OF INTERNAL REVENUE.
### No. 467.

Circuit Court of Appeals, Tenth Circuit.
March 9, 1932.

William H. Martin, of Tulsa, Okl. (William F. Tucker, of Tulsa, Okl., on the brief), for petitioner.

Preston C. Alexander, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch, A. H. Conner, C. M. Charest, and William E. Davis, all of Washington, D. C., on the brief), for respondent.

Before COTTERAL and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

In 1923 the Euterpe Mines Company, a Delaware corporation engaged in lead and zinc mining in Cherokee county, state of Kansas, became insolvent and its stock worthless. The above-named petitioner, Simon Jankowsky, residing at Tulsa, in the state of Oklahoma, was at the time the company went out of business the owner of 4,812 shares of the common stock and 1,452 shares of the preferred stock of the corporation. Shortly after the company was known to be insolvent, it ceased to do business and transferred all of its property to another corporation of similar name incorporated under the laws of the state of Oklahoma. The Oklahoma company assumed the indebtedness of the Delaware company. Petitioner and two other stockholders of the Delaware company were indorsers upon notes representing some of its indebtedness. They subscribed for the common stock of the Oklahoma company, while others not interested in the Delaware company subscribed for the preferred stock of the Oklahoma company. The funds so acquired were used in part at least by the Oklahoma company in liquidating the indebtedness of the Delaware company assumed by it.

In his income tax return for the year 1923 petitioner claimed a reduction on account of loss sustained on the common stock of the Delaware company owned by him in the sum of $35,070.87, and on account of the preferred stock of that company owned by him in the sum of $36,300. The Commissioner of Internal Revenue disallowed both items. Petitioner appealed from the ruling of the Commissioner to the Board of Tax Appeals. A majority of the Board allowed the deduction claimed on account of the preferred stock but disallowed the deduction claimed on account of the common stock.

The government has not appealed from the judgment of the Board of Tax Appeals allowing the deduction claimed on account of the preferred stock. The rightfulness of the allowance of that deduction, therefore, is not before us.

The Board of Tax Appeals found that the common stock of the Delaware corporation owned by petitioner was in 1923 valueless, but as stated by one member of the Board in his written opinion, petitioner "having failed to establish the cost of his common stock, no deduction can be allowed therefor." And as stated by another member of the Board in his written opinion: "But the value of the common stock so received in 1919 cannot be found from the evidence, and therefore, if for no other reason, the measure of gain or loss in 1923 could not be determined * * *."

The facts from which these conclusions are drawn are contained in the findings of fact made by the Board of Tax Appeals as follows: "Some time in 1916 or 1917 the petitioner, together with H. F. Aby and W. F. Tucker, purchased a mining lease on 20 acres of land in Cherokee County, Kansas, for $2,500. After considerable test drilling had been done, they decided that sufficient lead and zinc ore was contained in the property to make operations profitable. Accordingly, they purchased the necessary mining equipment and constructed a concentration plant, each party contributing his portion of the costs. As developments progressed on the mine, additional working capital was needed to secure which the parties decided to organize a corporation and sell stock. In the latter part of 1919 the Euterpe Mines Company, hereinafter referred to as the Delaware company, was incorporated under the laws of Delaware to take over the lead and zinc mining venture of petitioner, Aby and Tucker. Common stock of the corporation was issued to the individuals in exchange for their interests in the property. There were issued to the petitioner 4,812 shares. Up to that time his contributions in connection with the development of the mining property totaled $35,070.87. At various times thereafter petitioner purchased for cash 1,452 shares of preferred stock at a total cost of $36,300. * * * In June, 1923,

the Delaware company's concentration plant was destroyed by fire. After applying the proceeds of fire insurance to the payment of current obligations, its unpaid obligations, in the total amount of $117,143.95, were as follows: * * * Such liabilities were greatly in excess of the value of the assets remaining, namely, a mining lease on 20 acres of land, expiring in 1926, two derricks, a blacksmith shop, and drilling and mining equipment. After June, 1923, the stock of the Delaware corporation was worthless."

It is a mere truism to say that petitioner in making up his income tax return for the year 1923 was entitled to enter such deductions only as were at that time authorized by law. The stock of the Delaware company owned by petitioner represented invested capital. The only law which authorized the deduction of such losses on his income tax return for the year 1923 is found in section 214 (a) (5) (Revenue Act of 1921, c. 136, 42 Stat. 227, 239): "Losses sustained during the taxable year * * * if incurred in any transaction entered into for profit." These stocks owned by petitioner were acquired for profit and the losses sustained occurred during the taxable year of 1923. Petitioner proved to the satisfaction of the Board of Tax Appeals the amount of his investment in the preferred stock and was allowed it as a deduction. The Board disallowed the deduction claimed for the common stock because, as we have seen, petitioner failed to prove the amount of his investment in this stock, or, as stated by members of the Board of Tax Appeals, he failed to prove its cost or value. Petitioner's investment in the common stock consisted of his interest in the mining venture described in the findings of fact of the Board of Tax Appeals. The amount of his investment, measured in money, was necessarily a matter to be determined by the Board of Tax Appeals from the proof submitted at the hearing before it. Such proof might have consisted of evidence of the market value of the stock, if it had any, at the time it was received by petitioner in exchange for his interest in the partnership, or it might have consisted of evidence of the value of the property taken over by the corporation and of petitioner's interest therein. Evidently petitioner failed to make proof in either of these ways. He contends that he was not required to resort to either of these methods of proof. His position in respect to this question is stated in this language in his brief: "The taxpayer's position, on the other hand, was and is that the exchange made

in 1919 was one merely of form and not of substance; that the common stock of the Euterpe Mines Company, formed as it was merely to incorporate the mining business of the taxpayer and his associates, had no fair (or any) market value at the time of the exchange, and being so organized for that purpose no further proof was necessary than the transaction itself to evidence the fact that such stock could have no fair market value; that the common stock of the taxpayer received in exchange represented his investment in the mining property and so continued until it became worthless in 1923."

Many cases are cited by counsel in support of his contention. It is unnecessary to enter upon any discussion of this question. In our opinion, upon the facts found by the Board of Tax Appeals, the decision of the case is ruled by Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079.

Petitioner has argued rather ingeniously that the provisions of section 202 (b), Revenue Act of 1918, and section 202 (a), Revenue Act of 1921, authorize the deduction of his capital expenditures under the partnership as the amount of his loss on his common stock, and that proof of such expenditures was proof of the cost and value of his common stock. This contention is made, as we understand the argument, even though it be determined, as has been done, that the case is ruled by Marr v. United States, supra.

That part of section 202 (a), Revenue Act of 1918 (40 Stat. 1060), relied upon, reads as follows:

"Sec. 202 (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

"(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and

"(2) In the case of property acquired on or after that date, the cost thereof; * * *

"(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value if any. * * *"

And that part of section 202 (a), Revenue Act of 1921 (42 Stat. 229), relied upon, reads as follows: "That the basis for as-

certaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property. * * * "

On analysis it will be found that neither of these sections afford aid or comfort to petitioner. In 1919 when petitioner exchanged his partnership holdings for the common stock of the Delaware company the provisions of section 202 (b) of the Act of 1918 applied. Petitioner's interest in the mining property having been acquired after March 1, 1913, for the purpose of determining whether as a result of the exchange he had made a taxable gain or was entitled to a deductible loss, the cost of his interest in the mining property would be set over against the market value of the common stock received by him in exchange. In the findings of the Board of Tax Appeals there is no reference to the value of the common stock owned by petitioner, except as it is found that after June, 1923, the stock of the Delaware corporation was worthless. If the stock in 1919 had a market value, the gain or loss resulting from the exchange was or could have been determined and would have been taxable or deductible for that taxable year, as the case might be. If it did not have a market value in 1919, there was no taxable gain or deductible loss resulting from the exchange. If it be assumed the statute would be applicable in the event in some later year the stock received came to have a market value, such assumption is of no importance here. The facts fail to show that such a condition ever arose. It follows then that in 1923 when petitioner's common stock became worthless his loss resulting from capital investment would have to be determined in some other way than that provided by section 202 (b) of the Revenue Act of 1918. The burden of proof to establish a deductible loss and the amount of it was upon petitioner. Burnet v. Houston, 283 U. S. 223, 51 S. Ct. 413, 415, 75 L. Ed. 991.

The provision of section 202 (a) of the Revenue Act of 1921 is, in effect, the same as that provided in section 202 (a) (1) (2) (b) of the Revenue Act of 1918 respecting properties exchanged, with these exceptions: The 1921 Act makes the cost of the property exchanged the basis for ascertaining gain or loss and omits the limitation respecting the method by which the value of the property received may be determined. Under the provisions of 202 (a) of the Revenue Act of 1921, the gain or loss resulting from the exchange of petitioner's interest in the mining property for the common stock of the Delaware corporation would have been determined by placing the cost of his interest in the mining property over against the value of the stock received in exchange, ascertained in any legitimate way. If the value of the stock so determined amounted to more than the cost of his interest in the mining property, there would have been a taxable gain; if such value of the stock was less than the cost of the interest in the mining property, there would have been a deductible loss. The inquiry in the present case is not concerned with the loss or gain resulting from such exchange under the provisions of either section 202 (a) (1, 2), (b) of the Revenue Act of 1918, or under the provisions of section 202 (a) of the Revenue Act of 1921. This case involves the loss resulting to petitioner arising from capital investment in the common stock of the Delaware corporation in 1919.

As stated in Burnet v. Houston, supra: "The burden of proof to establish a deductible loss and the amount of it, clearly, was upon the respondent. * * * The impossibility of proving a material fact upon which the right to relief depends simply leaves the claimant upon whom the burden rests with an unenforceable claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof. * * * Neither can the presumption be indulged that the cost of respondent's interest in 1906 was the *value* of that interest in 1913, for non constat that such cost was the value even in 1906."

The Board of Tax Appeals did not err in disallowing the deduction claimed by petitioner on account of his common stock.

After the decision of the case by the Board of Tax Appeals, petitioner moved the Board: "To grant him a rehearing herein or to reopen this case for the purpose of permitting the introduction of additional evidence to prove the value of the partnership property transferred to Euterpe Mines Company (the Delaware corporation) in exchange for four thousand eight hundred twelve (4,812) shares of the common stock of that company in 1919."

Petitioner has assigned the refusal of the Board of Tax Appeals to reopen the case as error and as an abuse of discretion.

In his petition filed before the Board of Tax Appeals the petitioner alleged: "During several years prior to the close of the year 1923, the taxpayer had been a stock-

holder in, and president of, a corporation organized and existing under and by virtue of the laws of the State of Delaware, named Euterpe Mines Company, which had a capital stock of Four Hundred Fifty Thousand Dollars ($450,000.00), of which stock, in December, 1923, at the time the taxpayer alleges the same became worthless, the taxpayer was the owner of Thirty-six Thousand Three Hundred Dollars ($36,300.00) par value of preferred stock, for which he had paid to the company the par value thereof, and Four Thousand Eight Hundred Twelve (4,812) shares of common stock, which had cost the taxpayer the sum of Thirty-five Thousand Seventy Dollars and Eighty-seven cents ($35,070.87)."

The above allegations respecting cost and value of petitioner's stock were specifically denied in the answer filed in the case by the Commissioner of Internal Revenue, in this language: "Respondent denies any knowledge or information sufficient to form a belief as to the truth of the allegation that the petitioner in December, 1923, owned preferred stock of said Euterpe Mines Company for which he had paid the sum of $36,-300.00 and common stock which had been secured by him at a cost of $35,070.87, and therefore denies the same."

Thus the issue of cost and value of the stock, preferred and common, owned by petitioner was sharply presented by the pleadings. To sustain the allegations of his petition that his common stock had cost him the sum of $35,070.87 the petitioner introduced evidence showing the amount of money which he had invested in the property during the partnership and rested. There was no abuse of discretion by the Board of Tax Appeals in its refusal to reopen the case and retry this issue.

The petition for review is denied, and the appeal dismissed.