**HURST v. D. P. DAVIS PROPERTIES et al.**
**No. 7011.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 16, 1934.

Rehearing Denied March 16, 1934.

Appeal from the District Court of the United States for the Southern District of Florida; Louie W. Strum, Judge.

Suit by Floyd Hurst against the D. P. Davis Properties, a Florida corporation, and others. From a decree dismissing the bill, the plaintiff appeals.

James D. Moran, of Tampa, Fla., for appellant.

J. Turner Butler, of Jacksonville, Fla., and A. G. Turner, of Tampa, Fla., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

This is an appeal from a decree dismissing on final hearing a bill in equity to set aside the conveyance of Davis Islands by one corporation, D. P. Davis Properties, to another, Davis Islands, Inc., or in the alternative to have the grantee declared and adjudged to be liable for the debts of the grantor. The suit was against the two corporations and the receiver of the Properties Company. The bill alleges that the conveyance was made by the grantor while insolvent, with full knowledge of its insolvency, and with intent to defraud its creditors, and was accepted by the grantee also with knowledge or reasonable cause to believe that such insolvency and intent to defraud existed; and further seeks to show that all that was ac-

complished by the Islands Company was a reorganization of the Properties Company. These averments of the bill were put in issue by the answer of each of the defendants. The following facts were disclosed without substantial conflict by the evidence:

In 1924 the Properties Company was incorporated and acquired two small islands and adjacent tidewater lands in Hillsborough Bay, and situated within the corporate limits of the city of Tampa, Fla. The company's plans were to build a bulkhead around this area of about 800 acres, and by filling that area in with soil from the bay create an artificial island, improve and divide it up into lots, and place the lots on the market for sale. This proposed improvement was given the name of Davis Islands. During the Florida boom, and by the summer of 1925, all the lots on Davis Islands had been sold at substantial prices on executory contracts, under which 20 per cent. of the purchase price was paid in cash, purchase-money notes being taken for the deferred installments. In 1925 the Properties Company, encouraged by its success with Davis Islands, acquired 1500 acres of submerged lands on the water front opposite the city of St. Augustine, Fla., and there undertook a similar development, called Davis Shores, which on paper for a time was as successful as had been the development of Davis Islands. The two projects, though under one ownership, were handled separately and independently of each other, and separate books of account were kept. An office was maintained in Tampa for the management of the affairs of Davis Islands, and another at St. Augustine for the management of the affairs of Davis Shores. The Properties Company depended upon moneys received from purchasers of lots thereon for the completion of each project. By the summer of 1926 the boom had collapsed, the price of real estate had greatly shrunk, many of those who had purchased lots from the Properties Company both at Davis Islands and Davis Shores had ceased making payments, and other purchasers were seeking an opportunity to avoid their obligations for future payments. At that time the promised improvements on Davis Islands were only about one-third completed. Then it was that Davis Islands, Inc., was organized for the purpose of completing the improvements on Davis Islands. Upon its incorporation the Properties Company conveyed to it Davis Islands, the purchase-money contracts and other assets relating to that project. The consideration moving to the Properties Company for the conveyance consisted of 49 per cent. of the stock of the new company, the assumption of all debts incurred in the development of Davis Islands, and the option to repurchase 51 per cent. of the stock at a price which would yield the owners thereof a profit of $5,000,000. The remaining 51 per cent. of the stock was subscribed and $2,500,000 paid for it by the Island Investment Company, a financing company organized by Stone & Webster and associates. The Islands Company then proceeded to carry out fully its undertaking; it completed the improvements on Davis Islands, but at a cost of about $9,000,000, of which a third was realized from sales contracts. Before accepting the conveyance, Stone & Webster had an investigation made as to the financial condition of the Properties Company. That investigation fairly led to the conclusion that the Properties Company was then solvent. That conclusion, of course, was influenced by the amount represented by the purchase-money contracts which ran into many millions both at Davis Islands and at Davis Shores. At the time it conveyed Davis Islands to the Islands Company the Properties Company considered Davis Shores to be of equal or greater value and the more promising of the two projects, and apparently was convinced that, if it were relieved of its obligations as to the former it would be able to finance and complete the latter; at least it caused that representation to be made to Stone & Webster. In the latter part of 1926 the Properties Company pledged its 49 per cent. of the stock of the Islands Company to secure a $200,000 note which it was unable to pay at maturity, and at its request the Islands Investment Company took up the note and held the pledged stock as security for that amount. In 1927 the Properties Company was placed in the hands of a receiver, and subsequently, with the approval of the court, the stock was transferred to the Islands Investment Company in satisfaction of the note. Thus it happened that the Islands Investment Company became the owner of all the stock of the Properties Company.

Appellant furnished supplies to Davis Shores in 1926, and shortly after Davis Islands was conveyed to the Islands Company, accepted notes of the Properties Company amounting to about $40,000 in payment. These notes not having been paid at maturity, he sued on them in an action at law. After the receiver was appointed, he was permitted by order of court to bring this suit.

The testimony was given before the District Judge, and, upon considering it, he

reached the decision that the conveyance in question was not fraudulent as to the creditors of the Properties Company. We agree with this conclusion. An owner, even though he be insolvent, may convey a good title to his property to a bona fide purchaser for a present valuable consideration. In order to defeat a conveyance as in fraud of creditors, it is insufficient to show only a fraudulent intent on the part of the vendor, but it is necessary further to make it appear that the purchaser participated in the fraud. 12 R. C. L. 476, 533. This is not a case of a debtor attempting to prefer one creditor over another. The Islands Company was not a creditor of the Properties Company, and there is no question but that a valuable consideration was paid at the time of the transfer. In our opinion, it cannot fairly be said that the Properties Company at the time it made the conveyance of Davis Islands was insolvent or had the intention to defraud its creditors. It was amply solvent if collections could be enforced upon all or a substantial part of its contracts for the sale of lots. It realized that such collections could not be made unless the improvements upon the real estate projects were made as agreed. The plain object of the sale of Davis Islands was to insure, so far as possible, the completion of both projects. If Davis Islands were completed, the purchasers of contracts could not avoid their obligation to pay the balance due and to become due on their contracts, and therefore the stock received in part consideration of the sale would be worth more than all the stock in the Properties Company would have been worth had Davis Islands not been completed. There is no reason for saying that the Islands Company knew, or had reasonable cause to believe, when it accepted the conveyance, that the Properties Company was insolvent or intended to defraud its creditors. The Islands Company no doubt believed that it could make money by completing the necessary work at Davis Islands and compelling the contract holders to complete their payments. Its acquisition of the minority stock was the outcome of subsequent developments, and had the approval of the court in the receivership proceedings. The majority stockholders were not acquainted with or associates of the minority stockholders of the Islands Company. The dealings between them were at arm's length. The Properties Company would have been greatly benefited by its continued ownership of 49 per cent. of the Island Company's stock; and could have had no wrong motive in permitting that stock to pass out of its hands. It was only because of the great decrease in the price of lands and its inability to complete the Davis Shores project that it was unable to redeem its pledged stock.

■ Nor in our opinion was a reorganization of the Properties Company effected by the incorporation of the Islands Company. In the case of a reorganization, substantially all the assets of the old corporation are transferred to the new, and stockholders hold the same proportion of stock in the new as they had in the old corporation. Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079; Pinellas Ice & Cold Storage Co. v. Commissioner of Internal Revenue (C. C. A.) 57 F.(2d) 188. The Properties Company did not convey substantially all its assets to the Islands Company, and its stockholders did not acquire the same proportional interest in the new company as they had in the old.

The decree is affirmed.