## CUSHING v. UNITED STATES, and six other cases.
### Nos. 5831, 6359, 6361–6364, 6430.

District Court, D. Massachusetts.
Feb. 3, 1937.

Hale & Dorr and Geo. H. B. Green, Jr., all of Boston, Mass., for plaintiffs.

Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. to U. S. Atty., both of Boston, Mass.

McLELLAN, District Judge.

The petitioners seek to recover overpayments of income taxes for the year 1929. All seven cases were tried together upon stipulations and testimony, and may conveniently be disposed of in one opinion.

In 1929, the J. Cushing Company, a Massachusetts corporation, was dissolved under circumstances noted below, and its assets distributed in liquidation among its shareholders. The petitioners then held stock of the J. Cushing Company, and the present dispute arises over a failure of the government and the various petitioners to agree on the gain which resulted. Separate stipulations have been filed in each case, and the facts in each case are hereby found

to be as stated therein. Differences in the several cases, where material, are noted herein. Statements of fact are to be taken as findings of fact, and conclusions of law as rulings of law, in accordance with the statute.

The J. Cushing Company was engaged in the sale of hay, feed, and grain at wholesale and retail, with stores in Maine, New Hampshire, Massachusetts, and Rhode Island. The company maintained a mill at Fitchburg, Mass. Sales at wholesale were made at Ayer, Sterling, and West Berlin, all in Massachusetts. The business was founded in Civil War times by Joseph Cushing. In the early part of 1917, the business was conducted as a partnership by descendants of Mr. Cushing. Susan C. Dickinson, a daughter, held a half interest at that time, and the other half was divided among children of a son. On October 1, 1917, the J. Cushing Company was organized under the laws of Massachusetts, at which time it became the owner of the assets of, and subject to all the liabilities of the partnership. It issued all of its capital stock, consisting of 6,000 shares, to the partners in proportion to their interests. Milton L. Cushing, the petitioner in case No. 5831, and Ellen C. Miller, whose administrator is the petitioner in case No. 6359, received their shares at this time. The other petitioners received their shares subsequently, either by gift or bequest from Susan C. Dickinson.

On July 31, 1929, an agreement was made between the J. Cushing Company and a newly formed Delaware corporation of the same name, for the purchase by the Delaware corporation of the entire business, assets, properties, and good will of the Massachusets corporation. The Delaware corporation agreed to pay cash and property of a total value of $1,694,943.28. As a part of the agreement, the Massachusetts corporation made certain promises, among them the following: "The Massachusetts Company shall, and hereby does guarantee the payment to the Delaware Company of all notes and accounts receivable, whether owing by customers or by officers or employees or otherwise, to be transferred or intended to be transferred to the Delaware company pursuant hereto, except to the extent that the reserve of Six Thousand Dollars ($6,000.) shown on said balance sheet to take care of overdue accounts shall be sufficient to provide therefor." The agreement further provided that if this obligation should be assumed by individuals satisfactory to the Delaware corporation, the Massachusetts corporation would be relieved therefrom. On the same day, the individual stockholders of the Massachusetts corporation did assume this obligation, and their agreement was accepted as satisfactory by the Delaware corporation.

The Massachusetts corporation was then dissolved. The amount received from the Delaware corporation was, by vote of the board of directors, distributed to the shareholders with the exception of $30,000, an amount equal to $5 a share, which was placed in a savings bank trust account in the name of Milton L. Cushing and Arnold C. Dickinson, trustees, for the purpose of meeting any liability of the individual shareholders which might arise upon their assumption agreement. Eventually, the entire amount was used for this purpose.

At the time of dissolution, Milton L. Cushing and Ellen C. Miller held the shares which had originally been issued to them when the J. Cushing Company was organized as a corporation on October 1, 1917. The other five petitioners obtained their stock in the company either by gift or by bequest from Susan C. Dickinson. Edward M. Dickinson, Hilda D. Smith-Petersen, Porter S. Dickinson, and Arnold C. Dickinson each held 550 shares in 1929. Each received 150 of these shares by bequests in the will of Susan C. Dickinson, who died March 8, 1926. The first three received their other 400 shares each by gift on June 1, 1923. Arnold C. Dickinson also received 350 shares at this time, having previously obtained 50 shares by gift on January 8, 1920. The remaining taxpayer here involved, Charles P. Dickinson, held 250 shares in 1929. 150 of these were received by bequest at the same time as the other bequests noted above. The remaining 100 shares were a gift, made October 1, 1917.

Claims for refund were filed by all the taxpayers here involved seeking to correct the cost basis of the shares of J. Cushing Company stock, held by them as shown on their returns, and also to correct the amount received for their shares in liquidation in 1929. The Commissioner rejected all such claims, and these petitions followed.

It has been stipulated that the correct cost basis for those shares which passed under the will of Susan C. Dickinson is $200 per share. It is also agreed that the proper cost basis of those shares which passed by gift from Susan C. Dickinson

prior to December 31, 1920, is the fair market value of the shares at the time of the gift. The parties are unable to agree, however, as to the proper time for computing the cost basis of the shares issued to Milton L. Cushing and Ellen C. Miller on October 1, 1917, and the shares passing by gift from Susan C. Dickinson on June 1, 1923.

■■ As to the latter shares, section 113 (a) (2) of the Revenue Act of 1928 (26 U. S.C.A. § 113 note) provides: "If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift." In the six cases in which such shares are involved, the government has set up as an affirmative defense the fact that none of the partners of J. Cushing Company here involved reported income in their 1917 returns as a result of the incorporation of the business. It is the government's contention that since this was a closed and taxable transaction, Marr v. United States, 268 U.S. 536, 45 S.Ct. 575, 69 L.Ed. 1079, they should have done so, and that their failure to do it amounts to a statement that no such income was received. It is argued from this premise that the taxpayers Milton L. Cushing and Ellen Miller are now estopped from showing the value of their shares on October 1, 1917, or at least are not entitled in equity to recover any amount based upon a showing of the October, 1917, value.

It is also urged that in view of section 113 (a) (2) of the Revenue Act of 1928 (26 U.S.C.A. § 113 note), a like estoppel is applicable to those shares which were acquired by gift from Susan C. Dickinson after December 31, 1920.

There is no such estoppel as the government asserts. In United States v. S. F. Scott & Sons (C.C.A.1st, 1934) 69 F.(2d) 728, 729, 732, it is said: "To constitute estoppel (1) there must be false representation or wrongful misleading silence. (2) The error must originate in a statement of fact and not in an opinion or a statement of law. (3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the person against whom an estoppel is claimed." The second and third elements mentioned are both lacking in the present case.

The question whether a transaction like that which took place at the time of the incorporation of the J. Cushing Company in 1917 is taxable was not settled until 1925, when Marr v. United States, supra, was decided. At that time, four Justices dissented. There was no evidence of any departmental ruling or memorandum generally available to the public in 1918. The taxpayers' error was one of law, and of such a character that no estoppel arises. Jamieson v. United States (D.C.Mass.1935) 10 F.Supp. 321; Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511.

■ Nor was there any satisfactory evidence that the government was deceived by the returns or ignorant of the relevant facts. The evidence disclosed that in November, 1922, an examination of the books and records of Milton L. Cushing and Susan C. Dickinson was made by Revenue Inspector C. C. Robbins, covering their income tax liability for the year 1917. Copies of his reports were submitted in evidence. In these reports it is stated that the distributable income of the taxpayer from the partnership contained in the report is based on a report covering an examination of the books and records of the J. Cushing Company, dated July 1, 1921, and submitted by Revenue Agent J. J. Ellsworth. The Ellsworth report referred to, which is also in evidence, is addressed to the Internal Revenue Agent in Charge, Boston, Mass., and begins as follows: "1. In accordance with instructions, the undersigned has made an examination of the J. Cushing Company, a partnership, for the purposes of excess profits tax liability for the year 1917 up to October 1, 1917 and also the J. Cushing Company, a corporation, and its subsidiary the Cushing Holding Company from October 1, 1917 for the last three (3) months in 1917, * * *"

Upon all the evidence I find that the defendant has not sustained the burden of showing that the Commissioner was so misled by the petitioners' returns as to give rise to such an estoppel as that for which the defendant contends.

In Jamieson v. United States, supra, the petitioner held stock of the J. Cushing Company acquired under the same circumstances and in the same amounts as did Edward M. Dickinson and others of the present petitioners. The government made the same contention as to estoppel as is here made, and Judge Brewster found there was none. He held in that case that the proper basis for shares acquired by gift on June 1, 1923, was the fair value of the

shares on October 1, 1917. The same rule applies here. It becomes necessary, therefore, to determine the fair value of the shares on October 1, 1917, and also on January 8, 1920, because of the 50 shares given to Arnold C. Dickinson on that date.

The J. Cushing Company was a family corporation, and consequently there was no sale of shares upon the open market to serve as a guide to their value. Under such circumstances, the chief element of uncertainty is the value attributable to the good will of the company as a going concern. In determining this element, both parties arrive at their respective conclusions by capitalizing that portion of the average earnings of the business over a reasonable period which represents an excess over a fair rate of return on the average tangible assets of the business for the same period. This is also one method suggested in A.R.M. 34, 2 C.B. 31. The parties do not agree, however, as to the proper rates to be used in applying such a test to the present corporation. The government contends that 10 per cent. should be considered as a fair rate of return on tangibles in a business of this nature, and that only the balance of earnings over this amount should be used in valuing good will. The defendant urges that such balance of average yearly net earnings should be capitalized at 20 per cent. or multiplied by five in order to determine the value of the good will. The taxpayers urge that 6 per cent. should be regarded as a fair return on tangibles and that average net earnings beyond this amount should be capitalized at 10 per cent. or multiplied by ten in order to determine the value of the good will. Judge Brewster in his opinion in Jamieson v. United States, supra, indicates that the figures 8 per cent. and 15 per cent. are properly applicable to a business of this kind. The same result was reached in Schilling Grain Company v. Commissioner, 8 B.T.A. 1048, where a similar business was involved.

The government apparently contends that this court is as a matter of law precluded from taking into consideration the earnings of the J. Cushing Company for the year 1917, arguing that war conditions made that year so abnormal as to be untrustworthy. This argument overlooks the fact that to a prospective purchaser, recent earnings are of importance. See Johnson v. United States (Ct.Cl.) 44 F. (2d) 244. Moreover, on October 1, 1917, the war was by no means over, and the evidence showed that there was every prospect that the hay and grain business would continue to be good.

I doubt whether any formula can be treated as anything more than one of the things to be considered in valuing the common stock of a business corporation. Nor is my ultimate finding based solely upon any formula. I have sought to consider, among other things, the nature of the business, the value of the corporate assets, the average annual earnings, the character of the period during which the earnings were made, the character of the management, and the prospective earnings in the light of the past, in order to determine what a willing buyer would pay and a willing seller would accept for the stock. Taking into account all the factors, as shown by the evidence, I find that $225 represents the fair value per share of the J. Cushing Company stock on October 1, 1917, and that $270 is the fair value per share on January 8, 1920.

The only remaining question to be decided is whether the amount set aside as a trust fund in 1929 should be included as a part of the total amount received by the shareholders in liquidation of the corporation. It is evident that the price received by the Massachusetts corporation for the sale of its assets was the total price, less whatever might prove necessary to cover shrinkage of accounts receivable. In the absence of the arrangement subsequently entered into between the shareholders and the purchasing company, there could have been no final liquidation until the obligation was satisfied, and the amount received by the shareholders upon eventual liquidation would have been lessened by whatever was expended for this purpose. In order to facilitate an immediate dissolution, the shareholders assumed the liability, and in the liquidation that followed, a sum was set aside to cover it. I am of the opinion that such an amount does not properly constitute a part of "amounts distributed in complete liquidation of a corporation," within the meaning of section 115 (c) of the Revenue Act of 1928 (26 U.S.C.A. § 115 note).

Judgment is to be entered for the petitioner in each case in such amounts as, adopting the foregoing findings, the parties may agree upon. In the event of a disagreement, it may be referred to this court and hearings may be had for the

purpose of determining the amounts recoverable.

**Supplemental Memorandum as to Disposition Made of Motions for Judgment and Requests for Rulings of Law.**

In each case, the petitioner's motion for judgment is granted, upon the basis of the facts and conclusions stated in the opinion about to be filed, and to the allowance of these motions, the respondent's exception is saved in each case.

In so far as the requests entitled "Petitioner's Requests for Findings of Fact and Rulings of Law" constitute requests for rulings of law, they are granted to the extent appearing in the opinion about to be filed, and, subject in each case to the petitioner's exception, they are denied in so far as they are inconsistent with or not contained in substance in the opinion. To the allowance of such of the petitioner's requests for rulings of law as are granted, the respondent's exception in each case is saved.

The respondent's motion for judgment is in each case denied, subject to the respondent's exception.

The respondent's requests for rulings of law numbered I, II, and III are each denied, subject to the respondent's exceptions.

The respondent's fourth request for ruling reads: "In the use of the formula known as A.R.M. 34, in determining value of the stock of J. Cushing Company, under the evidence in these cases, the abnormal earnings for the period June 1, 1916 to December 31, 1917, should be excluded in computing the average earnings of the partnership or corporation for a period of years." The foregoing request is denied, subject in each case to the respondent's exception, but a word of explanation may here be added. The earnings during the period in question are not to be entirely disregarded. While they may be considered in connection with the earnings of other years, the extent to which the period was an unusual one, due to the war or for other reasons, should of course be taken into consideration. To say that they should not be considered at all would be to disregard common experience. In cases where corporate stocks are frequently bought and sold, it is well known that even unusual earnings in an extraordinary period enter into the price which sellers are willing to take and buyers are willing to pay for the stocks. The elements taken into consideration in determining the value of the stock of J. Cushing Company are indicated in the opinion, to which reference is here had.

The respondent's fifth request that in the use of the formula known as A.R.M. 34, in determining the value of the stock of J. Cushing Company, under the evidence in these cases, the percentages 10 and 20 are the proper ones to be used, is denied, subject in each case to the respondent's exception. This is a matter which is discussed in the opinion.